*395 OPINION OF THE COURT — bí the
Hon. J. R. NICHOLSON.
This case is brought before us by a writ of error to the circuit court of Greene county.
There are four assignments of error:
First, That the indictment is not drawn in conformity with the constitution, which requires that the style of all process shall be: “The state oí Mississippi,” and all prosecutions shall be carried on in the name, and by the authority of the “state of Mississippiand shall conclude “against the peace and dignity of the same.”
The second assignment is, that the words “then and there” are wanting before the words “feloniously, wilfully, and of malice aforethought,” in the concluding part of the indictment.
The third assignment is, that it does not appear by the record, that a copy of the indictment, and a list of the venire was furnished the accused two days previous to his trial.
And the fourth assignment, which is embraced in the bill of exceptions, is, that the court erred in deciding that Matthew Moody was a competent juror to pass upon the trial of the prisoner.
A passing remark is a sufficient notice of the first assignment. The indictment commences with “the state of Mississippi,” and concludes “against the peace and dignity of the same/''
This has been considered sufficient, according to the practice of f<jurteen years under the constitution. This assignment I consider, however, as having been abandoned by the counsel, inasmuch as it was not insisted on in the argument.
The second assignment is equally untenable. If the words “then and there”precede every material allegation, it is sufficient,- and, in drawing the conclusion from the preceding facts, these words may be omitted,- 8 Chitty’s Criminal Law, 736 & 7, and 751.
The third assignment is, That it does not appear from the record that a copy of the indictment, and a list of the venire was furnished the prisoner two days before his trial. But it appears from the record in this case, that on finding the indictment, the court ordered a venire of one hundred jurors to be isummoned, returnable on Thursday following; that oh Thurs *396 day, a venire of fifty more were ordered: after which, the case was continued till the next term.
At the subsequent term, on the first day of the term, a venire for thirty six jurors was issued, returnable en the next day. At the preceding term he had pleaded not guilty; and, alth.-ugh the trial began on Tuesday, and although this is a privilege w hich the law, in its benignity, extends to criminals in capital cases; yet it is a privilege which the prisoner may waive; and his pleadh g not guilty, and r.ot having claimed this privilege, amounts to a tacit waiver, and he cannot afterwards take advantage ef it; for his pleading has caused the objection; Chitty’s Crim. L., 405; 4 Hargrave’s St. Trials, 746. There is no error, then, in the third assignment.
The fourth and last assignment of errors, is, that the court erred in deciding that Matthew Moody was a competent juror to pass upon the trial of the prisoner. The juror was sworn on his voir dire,, and the court interrogated him os follows:
“Have you formed or expressed an opinion as to the guilt or innocence of the prisoner at the bar!”
Answer :'“I have.”
Question: “Have you formed or expressed that opinion from common report, or from the witnesses, or either of them!”
Answer:- “Common report only, I have never heard any of the witnesses say any thing on the subject.”
Question:- “Will any thing yon have heard or said respecting the prisoner have any influence on your mind as a juror, in the determination of this bcase!”
Answer. “It will not. I feel free to decide the case according to the evidence which may be produced on the trial.”
Upon which the court decided that he was a competent juror.
The question which is raised by this exception is one of grave import; not only to the accused, but to the community at large. The. great difficulty of laying down a fixed and determinate rule in the selection of jurors, by which the guilty may be punished and the innocent acquitted, has agitated the courts for centuries back.
The old English authorities lay down the rule, that, to incapacitate a *397 juror from setting upon the trial, he must have formed and expressed his opinions against the accused, with malice or ill will. This rule has heeu much softened, and, indeed, such is not the doctrine in the courts of this union, although the common law is opposed to tryingan individual by men who have prejudged his case; yet, in most of the states of the American union, we have constitutions which guarantee to the accused a fair and impartial trial.
Lord Coke has laid down the rale that a juror must stand indifferent, as he stands unsworn; Coke Litt., 155.
By the constitution of Mississippi declaration of rights, section 10, a speedy public trial by an impartial jury of the county is given to the accused. But how are we to ascertain the fact whether a juror stands- indifferent between the parties? This must either be drawn from the juror on his “voir dire,” or shown by evidence aliunde.
I believe the first important decision on this subject, in the American courts, is to be found in the trial of Col. Burr for high treason. The decision of chief justice Marshall in that case, has been looked to by the state courts as the pole star by which they were to be guided.
Judge Marshal says: (Burr’s Trial I Vol. 44,) “that to have formed and delivered an opinion, was sufficient to exclude from the jury, but- that slight impressions on the mind are not sufficient.
In the case of Vermilyea, ex parte, 6 Cowen, 563, justice Woodworth says,
“That to have formed and expressed an opinion from a knowledge of the facts is good cause of challenge.” And the learned judge goes on and says, that it cannot be material from what source the opinion is derived, if the bias proceeds from a preconceived opinion, it equally affects the accused.
Chief Justice Spencer, in the case of Vanalstyne, decided, that if a juror had formed and expressed his opinion from a knowledge of the facts, or from the information of those acquainted with the facts, it was good cause of challenge: but if the opinions of jurors were formed on mere rumours and report, that such opinions were not sufficient to disqualify. On an application for a new trial in the case of Fries, judge Iredell put the question on this ground, “that whenever a predetermined *398 opinion is formed, from whatever matives, it creates an .improper bias, extremely difficult to get rid of,” and the same doctrine is held forth by Justice Maxcy, in the case of the People vs. Matthew for the abduction of. William Morgan — 4 W endall, 229.. The rule then, to he drawn from these authorities, I think amounts to this, that if the juror has made up and expressed an opinion, either from a knowledge of the facts, or from the information of those acquainted with the facts, or a decided opinion from report, that he does not stand indifferent between the patties and should be excluded from the jury; and the situation of the juror must be ascertained by triors appointed for that purpose, or by the court, and when referred to the court it stands asa demurrer to evidence.
In the case of Flowers, decided in this court, December term, 1829, I am satisfied that I went foo far in laying down the rule, with respect to the examination of the juror on his voir dire. I there stated, that if the juror on being interrogated, answered positively and affirmatively, that he had formed and expressed his opinion, the court should set him aside without farther inquiry. Since the decision of that case, I have presided on the circuit at the trial of seven capital cases, and experience has fully satisfied my mind, that jurors frequently answer the question without understanding its true meaning. It is frequently the case, that a juror, who has barely heard the case from report, and has but a slight impression on his mind, will answer affirmatively,that he has formed and expressed opinions: but upon farther examination, it will be discovered to amount only to a hypothetical, and not a decided opinion. In fact, there are but few jurors who understand the difference between a fixed, and predetermined opinion, and a hypothetical one. Besides, much is often ascertained from the manner in which the juror answers the questions; whether he shows a sober indifference, an agitation of feeling, or signs of ill will. In fact, it is almost impossible, from the nature of things, to lay down any invariable rule on this subject. From the necessity of the case, much must be left to the discretion of the presiding judge, who is “prohac vice” of counsel for the accused, to see that he has a fair and impartial trial.— Let us apply the law as laid down above, to the present case, as shown by the bill of exceptions. The juror, Matthew Moody, was asked if he had formed or expressed an opinion, as to the guilt or innocence of the *399 accused; he said he had; he was then asked, whether that opinion was formed from report, or from hearing the witnesses; he said from report only, that he had never heard any of the witnesses say any thing about it. He was then asked, whether any thing which he had' heard or said, would have any influence on his mind in the determination of the case, as a juror; he said it would not, that he felt free to decide the case according to the evidence which might be introduced at the trial. It will be observed that the disjunctive conjunction is used instead of the copulative. The question is, have you formed, or expressed, instead of, have you formed and expressed. I have not been able to find a solitary case in the American deci sions, where the form of interrogatory has been practiced upon, which is set forth in this bill of exceptions.
The reason given in the books is, that a man who has made up his opinion, and expressed it aloud, will be much more apt to adhere to it, than if he had only formed it and kept it concealed.
This reason is not entirely satisfactory to my mind; I think if a juror hasmpde up a fixed opinion from a knowledge of the. facts, although he has kept that opinion locked up in his own breast, he is not a competent juror; but if he has only fashioned in his mind an opinion from report, and has not given utterance to that opinion, it would not be sufficient to exclude him.
It is uncertain from the bill of exception whether Moody had barely formed his opinion from report, or whether he had expressed that opinion. Batí am willing to give to it its most extended sense, and admit that he had both formed and expressed his opinion, and then taking all his answers together, to my mind it shows nothing more than a hypothetical opinion, if the report which he had heard was true, he thought him guilty; if it was not true, he thought him innocent. In fact, his answers taken altogether, shew clearly that he had not formed a decided opinion. His opinion had extended no farther than the law. The law had said that if the prisoner had committed the crime of murder, he should be punished; and yet this law was competent to try him. And I will here premise, that when establishing rules by which the community is to be governed — ■ whether in the legislative hall or on the judicial bench, we must lay down rules for man as he is, and not as he should be. And the idea of se *400 lecting jurors as pure and uncommitted as if they had just dropped from another planet at the moment of trial, is entirely Utopian.
When an outrageous crime is committed, it is immediately wafted on the swift pinions of rumour to every corner of the country, and men take up slight impressions which they frequently call opinions, but which readily yield to the evidence produced on the trial; and it is but rarely the case, that one of these rumor formed opinions amounts to any thing more than hypothetical. And if jurors are to be excluded, on whose minds slight impressions only are made, and that from report, we -may as well blot out from our criminal code, all those crimes of deep and malignant die;and I do not consider the establishment of such a rule as above laid down, in any way jeopardizing the rights of the citizen. There are so many safe-guards thrown around the accused in this country, that there isno danger of innocence being punished. Every member ofthe community is interested in protecting the innocent.
Although in England, the venire belongs to the king, yet in this country it may be said to belong to the accused; and is so often the case, that it is made out with a view to the acquittal of, the prisoner. And while we are cautious to protect the innocent, we must be careful not to let the guilty es* cape,
Neither do I think the establishment of the above rule at all in opposition to the true intent and meaning of the constitution. The framers of that instrument certainly did not understand the words impartial jury, to mean any thing, more or less, than that the accused should not- be tried by men who had prejudged his case; he is tobe tried in the county where the offencé is committed, and it is stretching presumption too far to suppose, that an atrocious deed can be committed and a .jury obtained within the limits of the county, who, have never heard of the transaction.
, An impartial juror is one whose mind is open to receive the impressions to be made by the testimony ; one whose mind is poised upon the scales of indifference, and capable of weighing the testimony adduced on trial, in opposition to floating rumoprs.
I again repeat, that the case at bar, to my mind, shows nothing more than a hypothetical opinion; it amounts, to the same thing as saying, if *401 the reports were true, he thought the prisoner guilty, but if they were false, he thought him innocent. I am therefore of opinion that the court below did not err in deciding that Matthew Moody was a competent juror, and that the judgment below must be affirmed.
Judges Turner and Montgomery concur.